IN RE NOON'S WILL.

*September 8—September 23, 1902.*

*Wills: Revocation: Revival.*

1. A clause in a will revoking all former wills is immediate and absolute in its operation, and the destruction of the later will, or the fact that it cannot be found after testator's death, does not revive the former will.
2. In order to revive a will once revoked, it must either be re-executed or be adopted by some subsequent writing executed as the statute (sec. 2282, Stats. 1898) requires. Thus, after a will deposited with the county judge had been withdrawn by the testator and revoked by a second will duly executed, the former will was not revived by the redeposit thereof with the county judge, even though the testator intended thereby to revive it and had destroyed the second will.

APPEAL from a judgment of the circuit court for Rock county: B. F. DUNWIDDIE, Circuit Judge. *Affirmed.*

Patrick Noon, of Rock county, Wisconsin, died at his home on November 17, 1899. On March 7, 1895, he had a will drawn and duly executed, disposing of his property. On March 18, 1896, he executed a codicil to his will, and then left the same with the county judge of Rock county. At that time he had two daughters, *Mary Flynn* and Katherine Langdon, his only heirs at law. July 17, 1897, Katherine died, leaving a son, *William,* and three daughters, besides her husband.

March 4, 1898, Mr. Noon withdrew said will from the custody of the county judge, and later in that month employed an attorney, Mr. Burr Sprague, residing at Brodhead, Wisconsin, to draw a new will. After some consultation and several visits to Mr. Sprague's office, such new will was drawn, duly executed and witnessed, and was taken away by the testator. Such will contained a clause revoking all former wills. April 1, 1898, he left a package with the county judge, which, after his death, was opened, and found to be the will first above mentioned. The second will was never discovered.

After Mr. Noon's death the will found in the possession of the county judge was offered for probate by R. B. Harper, the executor named therein. Guardians *ad litem* were duly appointed for the infants interested, and after a hearing duly had the county court made findings of the facts substantially as heretofore stated, and, in addition, that when the deceased refiled said will with the county judge it was his intention to revive the same as his last will, but that after the execution and publication of the second will there had been no republication of said first will, and that it had never been revived. Probate of said will was therefore denied.

The executor then took an appeal to the circuit court. The findings on the trial in the circuit court are substantially the same as the court below, except that the court found that said second will was drawn with the intention that it should remain as and for his last will, but by some mistake or oversight the deceased took and left the first will with the county judge, instead of the second will, and that the will so left with said judge was not left with intent to revive the same, or with intent that it should remain his last will. Probate of said will was again denied, and judgment to that effect entered. The infants *William Langdon* and *William* and *Esther Flynn,* by their guardian *ad litem,* appeal to this court.

*Wm. Smith,* guardian *ad litem,* for the appellants, argued,

among other things, that when a testator duly executes a valid will, and later executes another will, which contains a clause revoking the first will, but preserves both wills, and then destroys the second and evidences his intention to die testate by keeping the first and preserving it as his will, or does acts which show that he intended to make it his will, then the first will is entitled to probate. Schouler, Wills, §§ 413–415; ∴ Redfield, Wills, 308, 309, 375; Cassoday, Wills, § 344; *Williams v. Williams,* 142 Mass. 515; *Pickens v. Davis,* 134 Mass. 252; *Gould's Will,* 72 Vt. 316, 47 Atl. 1082; Woerner, Adm. (2d ed.) § 51; *McClure v. McClure,* 86 Tenn. 173, 6 S. W. 44. In Wisconsin, publication of a will is not necessary. Cassoday, Wills, § 153; *Allen v. Griffin,* 69 Wis. 529. There is a presumption that the deceased destroyed his second will with the intention of revoking it. *In re Steinke's Will,* 95 Wis. 121; *Linginfetter v. Linginfetter,* 1 Hardin (Ky.) 119; *Flintham v. Bradford,* 10 Pa. St. 82; *Marsh v. Marsh,* 3 Jones' Law (N. C.) 77; *Randall v. Beatty,* 31 N. J. Eq. 643.

*William G. Wheeler,* for the respondents.

BARDEEN, J. Both the county and circuit courts found that the second will executed by the deceased contained a clause revoking all former wills. This fact is challenged by the appellants, but, inasmuch as all the testimony in the case on that subject is to the effect that such a clause was contained therein, we cannot disturb the finding. Sec. 2290, Stats. 1898, provides, in substance, that no will shall be revoked unless by burning, tearing, canceling, or obliterating the same with intention to revoke, or by some other will or codicil in writing, executed as the law requires. Therefore, where a second will is drawn and executed with the formality required by the statute, and containing an unlimited revocatory clause, all former wills are wiped out and held for naught. The operation of the revocatory clause is immedi-

ate and absolute. It is an act done solemnly and deliberately for present effect, and not one contemplating that future circumstances are to determine whether it shall have force. As stated by the court in *Scott v. Fink,* 45 Mich. 241, 7 N. W. 799: "It operates at once, and does not apply as a mere contingent *caveat* against the objects at which it was aimed." The addition of the revocatory words is a mode of immediate cancellation of the former will, and renders it totally inoperative as a testamentary instrument. See *Cheever v. North,* 106 Mich. 390, 64 N. W. 455; *Dudley v. Gates,* 124 Mich. 440, 83 N. W. 97, 86 N. W. 959; *In re Goods of Hodgkinson* [1893] Prob. Div. 339. By the great weight of authority in this country the destruction or revocation of the subsequent will containing the revocatory clause does not have the effect of reviving the former will. Cassoday, Wills, § 386, and authorities cited. Therefore the fact that the second will drawn by the testator was destroyed, or could not be found after his death, did not revive or give legal vitality to the former one.

The question next arises whether there is anything in the case to show that the former will has been revived in such a way as to warrant the court in admitting it to probate as a legal will. The county court decided that, although the testator may have filed the first will with intention to revive the same, such act was not such a re-execution or republication as would operate to give it new life. The circuit court negatived the intent to revive, and found that the deposit of the first will with the county judge was through inadvertence or mistake. There is considerable evidence in the record to justify the findings of the circuit court, but we prefer to consider the case upon the facts as found by the county judge. We start with the assumption that the first will had been duly revoked, and was not revived by the loss or destruction of the second. The first will was then without any legal validity. The situation was the same as though it had never been written. Sec.

2282 provides that no will made within this state since January 1, 1896 (except nuncupative wills), shall be effectual to pass any estate, unless it be in writing, signed by the testator, or by some one authorized by him, and attested in the presence of the testator by at least two witnesses in the presence of each other. This court has decided that it is not necessary to the validity of a will that the witnesses thereto should know the nature of the instrument they are signing; nor is it necessary to the probate thereof that they should testify that the testator declared it to be his will. *Allen v. Griffin,* 69 Wis. 529, 35 N. W. 21; *Skinner v. American Bible Soc.* 92 Wis. 209, 65 N. W. 1037. The will, however, must be executed in substantial conformity to the statutory requirements, to be valid. The first will having become legally dead by revocation, we can see no way in which it could be revitalized except by some act which the law recognizes as being equivalent to execution under the statute. A codicil or subsequent writing adopting the former will, duly executed, or a re-execution of the old will with the required formalities, would undoubtedly revive it. See *Skinner v. American Bible Soc., supra; Flood v. Kerwin,* 113 Wis. 673, 89 N. W. 845. Any act short of that would lead to confusion, and open the door to fraud. The legislature, having seen fit to prescribe in definite terms the manner in which a will shall be executed to be valid, have indicated a policy which ought not to be frittered away by evasions or exceptions. We are aware that there are cases in the books and cited by appellants' counsel which say that the question of reviving a will is simply one of what the testator intended. That question, no doubt, may be involved in many cases; still it cannot be permitted to override or annul plain statutory requirements. To make a valid testamentary disposition of property, there must be substantial conformity to all statutory requirements. We believe the better and safer rule

to be to require that a will once revoked, to be revived, must either be re-executed or adopted by some subsequent writing, executed as the statute requires. Gary, Prob. Law, § 172.

*By the Court.*—The judgment is affirmed.