DANLEY *v.* JEFFERSON.

WILLS—REVOCATION — REVIVAL—VERBAL DECLARATIONS — SUFFI-
CIENCY.

Where a will is revoked by the execution of a subsequent one
containing a revocatory clause, it cannot be revived by the
destruction of the subsequent will and an express verbal
declaration by testator before witnesses that he desires the
prior will to stand. MCALVAY and MOORE, JJ., dissenting.

Error to Oakland; Smith, J. Submitted April 16,
1907. (Docket No. 131.) Decided January 6, 1908.

Forrest R. Danley presented for probate the last will
and testament of Edwin B. Jefferson, deceased. The
will was allowed in the probate court, and William W.
Jefferson appealed to the circuit court. There was
judgment for contestant on a verdict directed by the
court, and proponent brings error. Affirmed.

*Rockwell & Zimmermann,* for appellant.

*Patterson & Patterson* and *M. B. Farrington,* for
appellee.

MCALVAY, J. On October 6, 1905, Edwin B. Jeffer-
son, of the age of 73 years, made his last will and testa-
ment, disposing of all of his estate. It is unnecessary to
set forth this instrument, as no question is raised as to
its provisions, or the regularity of its execution. It con-
tained a clause revoking all former wills. Proponent, a
nephew of deceased, was named executor. This will was
signed by the testator and witnessed at the banking office
of Mr. Jossman, in Clarkston, Michigan, where he re-
sided. This will remained in the bank with testator's
other papers until seven or eight weeks later, when he re-
quested Mr. Jossman to come to his house, saying that he

desired to make another will. The second will was drawn as testator directed. The first will was used as a guide and but one material change was made. When the second will was made the first one was left with the testator and the second was kept at the bank. The second will named the same executor as the first, and contained a clause revoking all former wills.

On February 20, 1906, the testator, who at the time. was stopping at the house of his cousin Mrs. Helen Beach in Clyde, requested proponent to go to the bank at Clarkston and upon his written order get him this second will. Proponent, accompanied by Mr. Beach, went to Clarkston and received the will from the bank, and also went to testator's house in the same village and got the first will for him from his family Bible, where it had been kept. They brought both wills and gave them into his hands. Testator then stated that he had done wrong in cutting out Mrs. Beach, and he wanted to correct it by destroying the last will and letting the other stand, in which Mrs. Beach was mentioned. He took both wills and examined them closely, reading them through. He then gave proponent the last will, directing him to burn it. After the last will was burned testator put the first will in its envelope and sealing it handed it to proponent saying, ''hold the will, because that is the will I want executed.'' Four persons were present at the time of this occurrence, two of whom were not interested. It was admitted that all of them would testify to these facts as here related. The earlier will is the one contested in this suit. Upon these undisputed facts, at contestant's request, the trial judge directed a verdict in his behalf. Proponent assigns error upon such direction. A motion for a new trial was denied, upon which error is also assigned. Proponent asks this court to reverse the judgment of the circuit court.

There is but one question in the case, whether a will once revoked by an express revoking clause in a later will can be revived on the destruction of the later will where

the prior will has been carefully preserved by the testator, and where the testator, in the presence of disinterested witnesses, solemnly and deliberately directed that the later will be burned, and at the time of its destruction directed the executor to hold the prior will, declaring that it was the will he wanted executed, and at the same time giving his reasons for such action and direction.

It is insisted on the part of the proponent that this is a new question in this State, and that the cases cited and relied upon by contestant, viz., *Scott* v. *Fink*, 45 Mich. 241; *Stevens* v. *Hope*, 52 Mich. 65; *Cheever* v. *North*, 106 Mich. 390 (37 L. R. A. 561), are distinguishable from the case at bar; that in all of these cases the claim in support of the prior wills was that the destruction of the later wills, ipso facto, revived the earlier; that in none of these cases does it appear that upon the destruction of a later will there was any act or declaration on the part of testator tending to show an intent and attempt to revive and republish the former will. Upon this proposition alone proponent rests his case.

This court has decided in *Scott* v. *Fink*, supra, which has since been frequently cited and approved, relative to the revocation clause in a later will:

"It is a verbal act done solemnly and deliberately for present effect, and not an act contemplating that future circumstances are to determine whether after all it shall have any force. It is not a needful ingredient of the will. That is perfect without it. The addition of it is a mode of immediate cancellation of prior wills, and quite as unequivocal and unambiguous as many others within the statute whose meaning is open to no controversy. It operates at once, and does not apply as a mere contingent caveat against the objects at which it is aimed. It revokes them without reserve or qualification. And in case the document with which it is connected is itself revoked, that fact can have no effect as a restoration and republication of former revoked wills."

In *Cheever* v. *North*, supra, Justice MONTGOMERY, speaking for the court, said:

"There is an irreconcilable conflict of authority upon

the question of the effect of the destruction of a second or subsequent will upon an earlier one.  The great weight of authority is to the effect that the execution of a subsequent will, containing an express clause revoking the former will, operates as a revocation at once, and that the former will thus revoked cannot be subsequently revived, except by republication, and is not renewed by a destruction of the later will."

From these decisions we find that it is clearly established in this State that the mere destruction of a will which expressly revokes a former will does not revive the earlier will; but that a republication is necessary.  The law is too well settled in this State upon this proposition to again go over the ground covered by the Michigan cases above cited and the authorities upon which they rest.  Upon these authorities it is clear that the first will of Mr. Jefferson—being the will offered for probate in the case at bar—was expressly revoked by the later will, and is now of no force or effect unless, by the destruction of the later will and the acts and declarations of the testator at the time of such destruction, this will was revived by republication.  It is clear that both cases above quoted, as well as the cases cited by them, hold that such a will may be revived.  In several of the United States and in England statutes provide the method for the revival and republication of revoked wills.  In this State there is no such statutory provision.

In *Cheever* v. *North*, supra, this court said, "the former will thus revoked cannot be revived except by republication."  Our statute does not specify publication as a requisite to the validity of a will.  In those States where publication is expressly required by statute the courts have held that any method whereby the testator communicates to the witnesses that the instrument is his last will and testament is a sufficient publication.  *Buzby* v. *Darnell*, 52 N. J. Eq. 337; *Elkinton* v. *Brick*, 44 N. J. Eq. 154; *Lane* v. *Lane*, 95 N. Y. 494; *In re Beckett*, 103 N. Y. 167; *In re Hunt*, 110 N. Y. 278.

The weight of authority supports the proposition that publication is only necessary when required by statute. 30 Am. & Eng. Enc. Law (2d Ed.), p. 587, and note 2.

Publication, then, not being necessary in this State, the discussion as to what amounts to publication in those jurisdictions where it is essential has been deemed material as bearing upon the question as to what constitutes republication. Republication is not re-execution. It signifies publishing or declaring again.

The holding of this court that a republication of a revoked will must be accomplished in order to revive it, presupposes that the revoked instrument, though dead, may be, by a sufficient act of the testator, brought to life, and become active and vital again as a testamentary disposition of his property. That an attempt to do this was made by the testator in the case at bar cannot be doubted. Nor can his intention to revive this will by what he did be questioned. He had carefully preserved the earlier will. He caused both wills to be brought to him. After reading them carefully he ordered the later will destroyed by burning. He explained why he made the selection of the first will, and then sealing it in its envelope he handed it to proponent, saying, "Hold the will. That is the will I want executed."

This will was an instrument duly executed by the testator, attested and subscribed by witnesses, and in all respects, as appears from this record, conformed with the provisions of our statute regulating the execution of wills.

A republication which, under all the authorities, is an oral and not a written declaration, was the thing essential to revive the instrument. Testator's declaration identified it as his will, and also explained its selection. He ordered it held as the will he desired to be operative and effective. This was an ample republication, and all that could have been required as a publication (had it been essential) when the will was first executed. It was all the republication he could possibly have made.

There can be no doubt but that a re-execution of this

instrument would have made it effective as a last will and testament. Such act would not be a republication and was not what this court said was essential to revive a revoked will. But one authority has been found by the writer of this opinion which declares that a re-execution is essential. *In re Noon's Will*, 115 Wis. 299.

In that case testator made his will and deposited it with the probate judge. Later he withdrew it and made a second will with an express revocation clause. Afterwards he filed a package with the probate court which, after his death, proved to be the first will. The second will was never discovered. The probate court refused probate because there had been no republication to revive the will. The circuit court held that no intent appeared to revive the first will. The supreme court, in an opinion written by Justice Bardeen, held that, to revive a will, it must be re-executed or adopted by some subsequent writing executed as the statute for the execution of wills requires. Such holding however was not essential to the disposition of the case, but is, without doubt, the expression of that court upon the question.

To follow this case would, in our opinion, operate to eliminate from the law of wills the doctrine that a former will may be revived by the testator after the destruction of a later revoking will, a doctrine which has always been recognized. 30 Am. & Eng. Enc. Law (2d Ed.), p. 655, title, Revival or Republication, and cases cited in notes. To lay down such a rule is a matter for legislative, and not for judicial, action.

Under the circumstances of this case, the acts and declarations of the testator, as above stated, in the presence of disinterested witnesses, clearly indicated his intent and purpose not to die intestate, but to revive his former will, and such acts and declarations amounted to and were a republication of said will, which thereby revived and operated as the last will of proponent's decedent.

The circuit court was in error in holding the contrary opinion and directing a verdict for contestant. The judg-

ment should be reversed, with costs of both courts, and a new trial ordered.

MOORE, J., concurred with MCALVAY, J.

OSTRANDER, J.   I do not believe that the members of the legal profession, generally, have understood that the use of the word "republication," in the opinion in *Cheever* v. *North*, 106 Mich. 390, 393 (37 L. R. A. 561), was intended to commit the court to the doctrine that a will, revoked either by express declaration contained in a will of later date or by operation of law, can be vitalized by oral declarations of the testator.   Our statute, unlike that of some other States, does not prescribe publication as one of the forms to be observed in executing a will, so that the use of the term republication, in the opinion, cannot be referred to a new or second observance of a particular form. And the questions considered in *Cheever* v. *North* did not require a determination of requirements necessary to establish the validity of a will once expressly revoked. Treating the question as a new one, considering the policy of our law as evidenced by the statute of frauds and the statute of wills, the rule of law—to the employment of which this court is committed—that a revocatory clause in a will properly executed destroys, at once, the earlier testament, which is not revived by the destruction of the revocatory testament, it seems to me that the legal sufficiency of the earlier will should not be determined by the intention of the testator as evidenced by his oral declarations.   The safer and better rule is that, neither will being effective without some further action on the part of the testator, his intentions should be expressed in writing, formally sufficient to satisfy the statute.   *In re Noon's Will*, 115 Wis. 299.   See, also, *Lansing* v. *Haynes*, 95 Mich. 16; *Wirth* v. *Wirth*, 149 Mich. 687.   This court, having declined to follow the rule of the English law courts, is not relegated of necessity to that of the ecclesiastical tribunals.   See these rules stated and compared in *Rudisill's Ex'r* v. *Rodes*, 29 Grat. (Va.) 149.   And if revival of a

will expressly revoked may be accomplished by oral state-
ments, there is no apparent reason why intention may
not be considered for such a purpose when a will is re-
voked by operation of law. In either case the will
stands revoked, in either case the testator may, undoubt-
edly, make a new will precisely like the one revoked. In
my opinion, the court below was right, and the judgment
should be affirmed.

GRANT, C. J., and BLAIR, MONTGOMERY, HOOKER,
and CARPENTER, JJ., concurred with OSTRANDER, J.