*In re* KOHN'S ESTATE.

WILSON *v.* GRAEBNER.

1. WILLS—PROBATE OF ESTATES—WITNESSES.
    Upon the hearing of a contested will case, witnesses having any knowledge of facts material to the issues, in addition to the attesting witnesses, may be produced and examined.

2. SAME—EXECUTION—ATTESTATION—SIGNATURE OF TESTATOR.
    If the testator acknowledges and states to the attesting witnesses that the signature affixed to the instrument is his, a presumption arises that it was affixed in accordance with the requirements of the statute, but if the presumption is rebutted by evidence on the trial, the will cannot be sustained.

3. SAME—PUBLICATION.
    In Michigan, publication of a will, defined as "the act of making it known in the presence of witnesses that the instrument to be executed is the last will and testament of the testator" with the strict observance of specific formalities imperative in many jurisdictions, is not required: but in executing a will according to statutory requirements, the attesting witnesses should be advised that the instrument to which they subscribed is his will, and such execution is equivalent to publication.

4. SAME—RE-EXECUTION OF WILL—SIGNATURE.
    Where testatrix, instead of executing a new will, or changing the original will and subscribing it again, caused certain erasures and additions to be made therein without changing the date, and taking a dry pen retraced her former signature in the presence of the witnesses who were informed by her that it was her will and who signed as witnesses at her request, in her presence, and each in the other's presence, it was a valid execution of the instrument as modified.

5. SAME—DATE.
    The written date of a will or of its attestation establishes *prima facie* the date of its execution, but is not conclusive: the true date may be shown by competent evidence, the burden resting on the party so attempting to show a different time of execution.

Error to Saginaw; Gage, J.   Submitted June 6, 1912.
(Docket No. 28.)   Decided October 7, 1912.

Carl F. Wilson and another presented to the probate
court of Saginaw county for probate an instrument claim-
ed to be the last will of Louisa D. Kohn, deceased, show-
ing certain alterations.· Louise Graebner presented the
instrument as originally drawn, and a subsequent codicil.
On appeal to the circuit court a judgment was entered
admitting to probate the altered will and holding the codicil
revoked.   Contestant appeals.   Affirmed.

*Otto & Davis*, for appellant.

*Lee E. Joslyn* (*Weadock & Weadock*, of counsel), for
appellees.

STEERE, J.   This case presents a contest over the will
of Louisa D. Kohn, who died on January 20, 1911, aged
83 years, in Saginaw, Mich., leaving an estate valued at
approximately $8,000.   She had been a widow some 18
years, and during that time had control of, and managed,
so far as shown, her own property.   Five daughters and
two sons survive her, whose ages range from 45 to 58
years.   No question is raised as to her mental condition
or capacity to dispose of her estate by will.   This conten-
tion arises from her having first made her will, then a
codicil, and then taken steps to change and re-execute the
original will.

Four of the daughters will fare best if her last effort is
sustained.   Appellant's interests are to sustain the origi-
nal will and codicil; and the sons would benefit by no
will being admitted to probate.

There is little conflict in the testimony, and the case pre-
sents no serious issue of fact.

On June 23, 1905, while visiting a married daughter,
Mrs. Wilson, in Bay City, Mich., deceased made a will,
which was drafted by Lee E. Joslyn, an attorney, who
was Mrs. Wilson's brother-in-law.· After due execution

of the will in his office, deceased left it with him for safe-keeping. Two years later, June 4, 1907, she went into the courthouse in Saginaw, and procured Judge Riley L. Crane, an old acquaintance, to draft a codicil to her will, stating she had made a paper in Bay City and for that reason desired to make the one which he prepared as she indicated. After its execution she left it with him, for safe-keeping, in the judge of probate's office.

Two years later, April 7, 1909, while on another visit to Mrs. Wilson in Bay City—the occasion being a double anniversary celebration of Mrs. Wilson's marriage and Mrs. Kohn's birthday—she again visited Mr. Joslyn's office, in company with Mrs. Wilson, and informed him that she desired to make certain changes in her will. He had preserved the will of June 23, 1905, as she had requested, and produced it from his safe, inclosed in a sealed envelope, properly marked. It was read over and explained to her, and she stated what changes she desired. Instead of preparing a new will, Mr. Joslyn made the changes she desired by drawing ink lines through certain portions of the old will and writing in, with a pen, certain lines to comply with her instructions. He read the will to her as changed, and told her it was not necessary for her to re-sign it, but that she had better go over her signature without ink. Under his direction she took a dry pen and retraced her name, in his presence and that of Mrs. Wilson, who had accompanied her to the office, and then stated to two witnesses he had called that the paper was her will and the signature to it hers, and she desired them to sign as witnesses, which they did, in her presence and in the presence of each other, immediately under the signatures of the two former witnesses to the will, who had subscribed the attesting clause, dated June 23, 1905.

As the instrument reads, the will was executed and all four witnesses signed on that date. One of the witnesses called by Mr. Joslyn testifies she saw Mrs. Kohn retracing her name with a dry pen. The other did not. The paper as changed was again left with Mr. Joslyn, put in

a sealed envelope and kept by him until Mrs. Kohn's death, when it was filed in the probate court.

On January 28, 1911, Carl F. Wilson, as executor, petitioned the probate court of Saginaw county to admit such will to probate; and Louise Graebner, the appellant here, petitioned said court to admit to probate the will as originally drawn and the codicil of June 4, 1907. The two sons filed objections to the allowance of the will in any form. The probate court sustained the original will and codicil. From his order, one of the sons appealed to the circuit court.

On the trial in the latter court, the son failed to offer any testimony, or to further prosecute his appeal, and the proceeding resolved itself into a contention between proponents, seeking to establish the changed will of 1909, and appellant here, seeking to maintain the will as originally executed in 1905, with its codicil of 1907. The case was tried before a jury, and a directed verdict was rendered, sustaining the re-execution, and, as a consequence, finding the prior will and codicil revoked. Thereupon appellant removed the case to this court for review upon a writ of error.

In the absence of the subsequent proceedings of April 5, 1909, the will as originally executed in 1905, and its codicil of 1907, were valid, and entitled to probation. The only material question to determine is whether the instrument, as changed in Mr. Joslyn's office, was legally re-executed.

The will consisted of seven paragraphs. Alterations were made in but two, as follows: The last $3\frac{1}{2}$ lines of paragraph 4 were stricken out by drawing lines through them, and in lieu thereof was interlined:

"Provided that the division shall be so made that Louise Kohn Graebner shall receive two hundred less than either of my other four daughters above named."

And at the end of paragraph 5 was added the following:

"Provided that if my said daughter shall die without

issue then one-half of her share shall go to her husband, John Graebner, if living, the balance to go to my other daughters surviving me, provided that the amount to be received by said John Graebner shall not exceed one hundred dollars ($100.00)."

The concluding part of the will and attestation were unchanged, except by addition of the signatures and addresses of the two witnesses, called as stated. It is as follows:

" In witness whereof I have hereunto set my hand and seal at the city of Bay City, Bay county, Michigan, this twenty-third day of June, A. D. 1905.
                "LOUISA L. KOHN.    [L. S.]"

" STATE OF MICHIGAN, County of Bay—ss.:
    "On this twenty-third day of June, A. D. 1905, Louisa D. Kohn stated and acknowledged to us, the undersigned, that the within and foregoing was and is her last will and testament; and thereupon we, at her request and in her presence and in the presence of each other, have and do hereunto set our hands as witnesses to said last will and testament.

| " Names. | Residence. |
|---|---|
| "LEE E. JOSLYN, | Bay City, Michigan. |
| "F. L. WILSON, | Bay City, Michigan. |
| "SUSIE C. EAST, | Bay City, Michigan. |
| "MYRTLE M. McFARLIN, | Bay City, Michigan." |

That the manner of re-execution adopted in this case is far from ideal, and would defeat its purpose under certain contingencies, is manifest. Were the witnesses dead or otherwise unavailable, and it became necessary, as is often the case, to establish the attestation by proof of the handwriting of the witnesses alone, the instrument, speaking for itself, would necessarily be probated as having been executed on the date it bears, and the erasures and interlineations, with no memorandum of when or by whom made, would, under strict rules of probation and construction, be rejected, leaving the will to stand as originally drawn. But in this case the subscribing witnesses and scrivener who made the alterations happen to be available, and have testified in detail as to time and circumstances.

It is a recognized rule in contested will cases that they are open for general examination of witnesses having any knowledge bearing on the issues, both the attesting witnesses to the will and others. *Abbott* v. *Abbott*, 41 Mich. 540 (2 N. W. 810).

It stands established in the case that the erasures, interlineations, and additions appearing in the will were made under her directions, in her presence, and at her request; that the will, as changed, was read over to and approved by her; that the signature to it was her genuine signature; that she did not rewrite her name to the altered document, because her signature was already there in the proper place, and she was advised the "dry pen" performance was equally good. Her act in that particular might be regarded as of some probative force as indicating that she understandingly adopted her signature as of that date to the instrument as it then stood. She thereupon so declared it to the attesting witnesses, who, at her request, in her presence, and in the presence of each other, attested the will by subscribing their names as witnesses. In the latter particular the requirements of the statute were strictly followed. While in many jurisdictions statutory requirements make it imperative that the testator sign in the presence of the witnesses, ours do not so specify. In this State the requirements for execution, or re-execution, of a will are as follows:

"No will made within this State, except such nuncupative wills as are mentioned in the following section, shall be effectual to pass any estate, whether real or personal, nor to charge or in any way affect the same, unless it be in writing, and signed by the testator, or by some person in his presence, and by his express direction, and attested and subscribed in the presence of the testator by two or more competent witnesses." 3 Comp. Laws, § 9266 (4 How. Stat. [2d Ed.], § 10979).

This makes imperative three things: The will must be in writing; it must be signed by the testator (or by some one in his presence acting for him); and two or more com-

petent witnesses must attest and subscribe as witnesses in the testator's presence.

" In jurisdictions where the statute is modeled upon the statute of frauds, 29 Car. II, c. 3, § 5, the requirement of which is that the will be 'attested and subscribed in his presence by three or four credible witnesses,' it is well settled by judicial construction that testator may, if he chooses, sign his name out of the presence of the witnesses and afterwards make acknowledgment before them." Page on Wills, § 203.

See, also, Schouler on Wills, § 321.

If the testator acknowledges and asserts to the attesting witnesses that the signature is his, a *prima facie* presumption arises that it was affixed when and in form required by law; but if the evidence on the trial shows to the contrary the will cannot be sustained.

This brings us to the question of whether testator, on reexecution of her will, after making certain changes, could legally adopt, as of that date, to that instrument her genuine signature previously affixed to it in the proper place.

Publication of a will, defined as "the act of making it known, in the presence of witnesses, that the instrument to be executed is the last will and testament of the testator," with the strict observance of specific formalities imperative in many jurisdictions, is not required in this State. *Danley* v. *Jefferson*, 150 Mich. 596 (114 N. W. 470, 121 Am. St. Rep. 640, 13 Am. & Eng. Ann. Cas. 242); *In re Kennedy's Estate*, 159 Mich. 548 (124 N. W. 516, 28 L. R. A. [N. S.] 417, 134 Am. St. Rep. 743, 18 Am. & Eng. Ann. Cas. 892). But in the execution of a will, according to the statutory requirements, the attesting witnesses signing at the request of the testator, should be advised that the instrument to which they subscribed is his will. Execution in substantial compliance with statutory provisions is, in this State, equivalent to publication as treated by text-writers, and is discussed in many published decisions of other States:

"The methods of republication prescribed by our mod-

ern statutes are two: Re-execution and by codicil. Re-execution must be had with all the formalities necessary for original execution. * * * Thus a testator may acknowledge his signature before the witnesses in republication, instead of making a new signature, since the statute gives him that privilege in original execution. But the witnesses cannot acknowledge their signatures, since the statute gives them no such permission. They must sign the instrument once more in the presence of the testator, at his request, just as in original execution." Page on Wills, § 306.

"The testator need not sign the will again; for if he acknowledges his signature before the required number of witnesses, with the proper formalities, this is good for either re-execution or an original execution." Schouler on Wills, § 443.

*Vide* 29 Am. & Eng. Enc. Law (1st Ed.), p. 333, and cases cited.

In absence of proof to the contrary, the written date of the will, or its attestation, establishes *prima facie* the date of its execution, but it is not conclusive, and the true date may be shown by competent testimony; the onus of impugning the written date and establishing the true date being upon the party so denying and alleging. In this case proof as to the actual date of the alleged re-execution is positive and uncontroverted. In support of their respective contentions, opposing counsel cite as controlling the opposing cases of *Wright* v. *Wright*, 5 Ind. 389, and *Hesterberg* v. *Clark*, 166 Ill. 241 (46 N. E. 734, 57 Am. St. Rep. 135). In those two States the statutory requirements for execution of wills are substantially the same as in Michigan. In each of said cases, after the original execution of the will, proceedings were had at a later date similar to those relied on here to establish re-execution, except that in neither case did the witnesses re-sign.

In *Wright* v. *Wright*, *supra*, the witnesses testified that on a date prior to the alleged re-execution they attested the testator's will, subscribing the same as witnesses, in his presence, at his request; that on a later date they

were called on again by the testator to witness an addition he desired to make in his will, which he inserted in the original in their presence, requesting them to take notice, which they did, but it was not re-signed by him or them. The court there said:

"We are decidedly of the opinion that the will, including the new provision, was duly executed and attested."

In *Hesterberg* v. *Clark, supra,* the testator, having properly executed a will, desired to make a change in it, and a few days later sent for the two subscribing witnesses, one of whom had drafted the instrument. He interlined an additional bequest, at testator's request, in his presence, and in the presence of the other witness. Neither testator nor the witnesses again signed. The court there said:

"We cannot regard the position taken in the *Wright Case,* that a reattestation of the will was unnecessary, as sustained by the authorities, or as, in this State, being in accord with the provision of the statute in regard to wills. * * * To hold that a reattestation of the will as changed, or an attestation of the interlined part, evidenced by a re-signing of the witnesses, is unnecessary, would be to dispense with a substantial requirement of the statute, and lead to uncertainty and confusion as to the law in the proof of wills."

If any inference is to be drawn from this language, applicable to the instant case, it is that the re-execution would have been valid, had the witnesses re-signed and re-attested the document in its changed condition. In neither of those cases is the failure of the testator to re-sign even suggested as an irregularity, though the fact was shown. The question on which those cases turned and are in conflict is not involved here. In those cases no attesting witnesses subscribed their names to the re-execution, as required by statute. Here they did. New witnesses to the will as then prepared attested and subscribed it as witnesses, in the presence of the testatrix, at her request; she declared to them it was her will and

signed by her. This was a substantial compliance with the provisions of our statute in regard to the execution of wills.

The judgment is affirmed, with costs.

MOORE, C. J., and McALVAY, BROOKE, STONE, OSTRANDER, and BIRD, JJ., concurred.