| 151 | 513 |
| 152 | 196 |
| 153 | ¹719 |

## LEFFINGWELL *v.* BETTINGHOUSE.

1. WILLS—TESTAMENTARY CAPACITY—EVIDENCE—SUFFICIENCY.
   Instances of forgetfulness, habits of untidiness increasing with advancing years, and failure to exhaust the subject of conversations, afford no evidence of lack of testamentary capacity.

2. SAME—ADMISSIONS BY PROPONENT.
   Statements made by the proponent of a will contemporaneous with its execution, characterizing conduct of the testator, to the effect that testator acted like a crazy woman and that proponent could do nothing with her, afford no evidence of a lack of testamentary capacity where there is nothing to indicate insanity in the conduct of testator so characterized.

3. SAME—CONDUCT DURING LAST ILLNESS.
   A raving spell during the last illness of an aged person has no tendency to prove that she lacked testamentary capacity when she made her will two years before.

4. SAME—INSANE DELUSION—LACK OF FILIAL AFFECTION.
   That testator reached an erroneous conclusion that some of her children lacked filial affection for her, cannot be said to be an insane delusion where it was based upon evidence consisting of their refusal to assist her in carrying out her plans, of which they did not approve.

5. SAME—UNDUE INFLUENCE—INFERENCE FROM OPPORTUNITY.
   Undue influence will not be inferred from opportunity.

6. SAME—SUBSEQUENT CONVERSATIONS—ADMISSIBILITY.
   Conversations between testator and the beneficiary under her will, occurring after the will was made, are incompetent to show undue influence except when accompanied by other facts and circumstances warranting the inference that similar statements were made before.

Error to Kent; Wolcott, J. Submitted· January 13, 1908. (Docket No. 12.) Decided March 17, 1908.

Eliza Leffingwell presented for probate the last will and testament of Amelia M. Bettinghouse, deceased. The

will was allowed in the probate court, and Henry C. Bettinghouse and others appealed to the circuit court. There was judgment for proponent on a verdict directed by the court, and contestants bring error. Affirmed.

*Taggart & Taggart*, for appellant.

*E. J. Doyle*, for appellee.

CARPENTER, J. The parties to this suit are brothers and sisters, children of Amelia M. Bettinghouse, deceased. Amelia M. Bettinghouse died October 27, 1905, in her 83d year. She executed a will July 8, 1903. She was then in her 81st year. She bequeathed substantially all her property, consisting of a house and lot in the city of Grand Rapids, and about $3,500 in money, to proponent, her youngest daughter, Eliza Leffingwell, though she gave a small amount to each of the contestants. This is a proceeding to admit said will to probate. Contestants contend that the testatrix lacked testamentary capacity; that the will was the result of an insane delusion and that it was procured by the undue influence of proponent, Eliza Leffingwell. In the circuit court the issue was tried before a jury and a verdict directed in proponent's favor. Contestants contend that this decision was erroneous and ask for a reversal of the judgment.

Amelia M. Bettinghouse was a midwife. She was active in her profession up to her last illness which commenced a short time before her death. She was industrious and thrifty and accumulated the property in controversy. Not one instance of lack of business shrewdness is disclosed by the testimony. For several years prior to 1902 she intended to make a will—though she never did make it—giving to her son Henry C. Bettinghouse, one of the contestants, all or nearly all her property. An incident occurred that year which changed her intention. That incident was this: She was annoyed very much because the neighborhood boys played ball upon a vacant lot adjoining her home. The players broke down her

fence, and when she built a new and higher fence, they came on her premises by means of a stepladder; they broke the windows in her house, and tore down her chicken park. This nuisance continued for a long time. Testatrix resorted to extreme and perhaps unwise measures to stop it. She threw rotten eggs at the players and daubed excrement on the ball ground, but the ball playing continued. Among the players were employés of the fire department. Her son Henry was assistant chief in that department. She asked him to interfere. According to his own testimony he expressed no sympathy with his mother and gave her to understand that he would not assist her. Proponent, on the other hand, sympathized with her mother and did what she could to stop this nuisance—and in this respect she differed not only from Henry, but from the other children of testatrix residing in Grand Rapids— and it was stopped. This conduct of Henry greatly incensed testatrix and from that time to the time of her death she exhibited to him and to all others her resentment and there is no doubt whatever that it resulted in changing her testamentary plan.

Should the trial court have submitted to the jury the questions of testamentary capacity, insane delusion, or undue influence?

*First.* The question of testamentary capacity. We may dispose of this question upon the assumption that there was no question for the jury unless lack of testamentary capacity could be inferred from certain acts, conduct, and statements of testatrix, and certain admissions of proponent hereinafter referred to. The acts, conduct, and statements of testatrix relied upon as evidence of lack of testamentary capacity are instances of forgetfulness which were neither numerous nor remarkable. Habits of untidiness which increased with advancing years. This was not evidence of insanity. See *Hibbard* v. *Baker*, 141 Mich. 124. Stress is laid upon the fact that testatrix in her conversations would pass abruptly

from one subject to another. We quote the most significant testimony upon this subject:

"She would be talking about her baby cases and then turn right off before she was half way through and commence about the fire department."

What is really meant by this is that she did not exhaust the subject of her conversations. The utmost that can be said of this testimony is that she did not discuss a subject as fully as in the opinion of the witness it should have been discussed. According to this test, who would not be judged insane? There is no evidence of insanity. See *Blackman* v. *Andrews*, 150 Mich. 322. Other statements, acts, and conduct are referred to. They are less significant than these and need not be detailed. Under the authority of *Hibbard* v. *Baker* and *Blackman* v. *Andrews*, supra, they afford no evidence of lack of testamentary capacity.

Perhaps the most significant testimony is that relative to admissions made by proponent. There is testimony that in characterizing her mother's conduct in trying to stop the ball playing, she said: "She acts like a crazy woman," and after her mother was taken sick in her last illness, she said: "She is having another raving spell again," and also—the witness thinks this was in 1903—she said: "Mother acts like a crazy woman, I cannot do anything with her." Do these admissions afford evidence of lack of testamentary capacity? I do not understand that it is claimed that proponent actually thought her mother insane. Her statements were merely extravagant comments on conduct which though peculiar was nevertheless sane. For instance, she said her "mother acted like a crazy woman," because she threw rotten eggs at the ball players and daubed their ball grounds with excrement. No one claims that this was insane conduct. It was conduct which testatrix thought would accomplish a most important and desirable object. Had proponent taken the stand as a witness for contestants and described

this conduct, she would not, under the authority of *Hibbard* v. *Baker* and *Blackman* v. *Andrews*, supra, have been permitted to express an opinion that her mother lacked testamentary capacity. Neither could she base such an opinion upon the fact that her mother would not follow her advice, and had she expressed such an opinion, the jury would have been instructed to disregard it. Is the expression of such an opinion out of court entitled to greater weight than when made in court? Certainly not. The raving spell during the last illness of testatrix had no tendency to prove that she lacked testamentary capacity when she made the will two years before. Declarations and conduct of testator after a will is made are often admitted to prove lack of testamentary capacity. See *Spencer* v. *Terry's Estate*, 133 Mich. 39. This is upon the theory that the subsequent condition may be presumed to have existed when the will was made. Where that presumption is forbidden—and this is such a case—such testimony is inadmissible. We conclude therefore that the issue of testamentary capacity was not one for the jury to determine.

2. Insane delusion. There is evidence that testatrix reached the conclusion that the contestants, particularly her son Henry, lacked filial affection for her. It is said that this conclusion was an insane delusion. It is possible that it was an erroneous conclusion, and for that reason a delusion. But it certainly was not an insane delusion. It was a conclusion reached by weighing evidence, and there was evidence to justify it. It would have been error to submit this issue to the jury. *Bean* v. *Bean*, 144 Mich. 599.

3. Undue influence. Is there evidence that the will was the result of undue influence exercised by proponent over testatrix? Nearly all of the arguments advanced by contestants in support of the claim that there was evidence of undue influence are answered by saying that undue influence will not be inferred from opportunity. It is insisted however that there is testimony tending to prove

that proponent "poisoned the mind of her mother by statements that were untrue," and thereby exerted an undue influence over her will.    The only testimony which we have been able to discover in support of this contention was given by contestant Amelia Bordeaux.    This testimony related to certain conversations which occurred when she, proponent, and testator were together in proponent's home, and she testified on her cross-examination that "the conversations I have detailed must have been after the will was made."    Manifestly what was said at this time could not have influenced testatrix in making the will.    This testimony is entirely inconsequential unless it warrants the inference that similar statements had been made before, and that such statements influenced the making of the will.    Is this a legitimate inference?    In *Walts* v. *Walts*, 127 Mich. 610, it is said:

"Evidence showing acts of undue influence at a date subsequent to the execution of the will is competent, in connection with other facts and circumstances, in support of the charge of undue influence exerted at the earlier date, see *Porter* v. *Throop*, 47 Mich. 313; *Haines* v. *Hayden*, 95 Mich. 349."

Here there is an entire absence of such other facts and circumstances.  Moreover, the circumstances surrounding the conversation should be considered.    The witness Amelia Bordeaux resided in Buffalo, New York.    She had come to Grand Rapids to see her relatives and while visiting proponent and her mother these conversations occurred.    They related to the conduct of the other children toward their mother at the time of the trouble with the base ball players.    It is going altogether too far to assume that what was said on this somewhat unusual occasion was merely a repetition of what had been said before. Nor can it be inferred that testatrix was in any way influenced by the opinion of proponent.    The substantial change she made in her plan was to substitute proponent for her son Henry as the principal legatee in her will. We know why this change was made.    It would scarcely

be too much to say that the testimony demonstrates that it was made because of the base ball trouble. There is then no reason to infer that it was made because of any influence exerted by proponent.

I think the learned trial judge correctly decided that there was no evidence of undue influence.

The judgment is affirmed.

GRANT, C. J., and BLAIR, MOORE, and McALVAY, JJ., concurred.