*In re* PROVIN'S ESTATE.

PROVIN *v.* PROVIN.

1. EVIDENCE—PRIVILEGED COMMUNICATIONS—ATTORNEY AND CLIENT—WILLS.

In a proceeding for the probate of a will, which is contested on the ground of undue influence of the testator's wife and incompetency of the testator to make a will, an affidavit of the deceased, prepared by his attorney more than a year before

his death, with reference to a proposed bill of complaint to be filed against the wife, averring fraud of his wife in the procurement of a deed of forty acres of land to her daughter-in-law, is not subject to the objection that it is a privileged communication.[1]

2. WILLS—UNDUE INFLUENCE—DECLARATIONS OF TESTATOR.
The declarations of a testator are not competent evidence of undue influence, although his affidavit showing his attitude of mind towards his wife who was his sole beneficiary would be competent.

3. SAME—EVIDENCE EXCLUDED.
No reversible error is committed in excluding such affidavit from the evidence in a case where a verdict refusing the probate of testator's will would have been contrary to the great weight of the evidence, and other proof showed the facts stated in the affidavit without contradiction.

Error to Kent; McDonald, J. Submitted February 10, 1910. (Docket No. 134.) Decided April 1, 1910.

Margaret M. Provin presented for probate the last will and testament of Charles A. Provin, deceased. The will was allowed in the probate court, and Omar H. Provin and Fred J. Provin, contestants, appealed to the circuit court. A judgment for proponent is reviewed by contestants on writ of error. Affirmed.

*Smedley, Hall & Freeland* (*Ewing & Dalton*, of counsel), for appellants.

*Clapperton & Owen* (*J. Byron Judkins*, of counsel), for appellee.

OSTRANDER, J. The testimony for proponent tended to prove that Charles A. Provin, who then resided in the village of Rockford, in Kent county, and who was about 73 years of age, arranged by mail with Major E. T. Watkins, a lawyer having an office in Grand Rapids and another in Rockford, to meet him at Rockford on February

---

[1] As to privilege of communications to attorney during preparation of will, see note to *In re Young* (Utah), 17 L. R. A. (N. S.) 108.

29, 1908. These men had been acquainted for 50 years, and Mr. Watkins had rendered Provin some professional services. On that morning Provin called upon Watkins at his office, coming there alone, walking from and to his own home. In accordance with the instructions of Provin, Mr. Watkins prepared, and there was executed, a deed of an undivided half interest in 80 acres of land, a part of the Provin farm of 240 acres, which deed reserved a life estate to the grantor, and which deed was by Provin later deposited with a banker to be delivered to the grantee, Hattie Fisher, after the grantor's death. Mr. Watkins had previously, on February 4, 1908, prepared, and Provin had executed, a deed of the other undivided half of the 80 acres, in which deed Margaret, the wife of Mr. Provin, was the grantee. Mr. Provin desired, also, that Mr. Watkins should draw his last will, and the subject was discussed between them during the forenoon of the day in question. Mr. Provin went away at dinner time, returning, as he said he would do, in the afternoon. A will was drawn and executed, by the terms of which all of the estate of Mr. Provin, after payment of debts and funeral expenses, was given to Margaret Provin, wife of the testator. At the request of the testator, Mr. Watkins took the will with him to Grand Rapids and kept it until the death of the testator, when he filed it in the probate court. The testator died August 4, 1908. The will was offered for probate by the widow, and, after a contest, was admitted to probate. In the circuit court another contest was had, and the verdict of the jury and the judgment of the court are in affirmance of the action of the probate court.

Charles A. Provin had no children. His wife had one son, Frank Fisher by name, by a former marriage. His relatives, other than his wife, are nephews and nieces and the contestants, his brothers. It is claimed that he was not mentally competent to make a will and that he was unduly influenced in his disposition of his property by his wife, the proponent.

A large number of errors are assigned, based, a few of them, upon rulings made during the taking of testimony, the most of them upon the charge to the jury and refusals to charge as requested. Contestants offered in evidence an affidavit, which the testimony tended to prove was made by the deceased June 22, 1907. It was excluded. This is the only ruling upon testimony complained about in this court. The objection made was that it was immaterial, incompetent, irrelevant and privileged. The court excluded it upon the ground of privilege. The value of this declaration of the testator to contestants is asserted to be the evidence it affords of his attitude towards his wife at the time it was made. It is insisted that it tends to prove that a considerable change of his feeling for his wife was in some way brought about between the time of making the affidavit and the time of making the will, and supports the inference that undue influence was exerted. It appears that in April, 1907, the testator, his wife joining, conveyed 40 acres of his land, reserving to grantors a life estate therein, to her daughter-in-law, Hattie Fisher, who in turn made her deed to Margaret, May 10, 1907. Both deeds were recorded. This transaction coming to the knowledge of the brothers appears to have exercised them considerably. It is their claim, based upon declarations of the testator which were given to the jury, that this deed was procured by deceit, and that testator supposed that he had merely executed a life lease of the 40 acres and had sought to have his wife reconvey the land to him, which she refused to do; that later, during a visit he made to one or other of his brothers, he visited a lawyer, the same one who drew the affidavit, who prepared a bill of complaint, which was offered by contestants and received in evidence. It is not printed, but it seems to be conceded that it was signed and sworn to by the decedent and was in form a bill to set aside the deed of the 40 acres to his wife, and set out in substance the matter contained in the said affidavit. The bill of complaint was never filed, but was laid aside by direction of the deceased, and

it does not appear that after hearing it read, signing and verifying it and ordering it laid aside, he ever again referred to it.   Later in the year, in December, the contesting brothers, in the probate court, began proceedings to have decedent adjudged to be an incompetent person. After a hearing the proceeding was on February 8, 1908, dismissed.

The affidavit which the court excluded contains among others declarations the substance of which is here set out: That affiant was 73 years old, owner of 240 acres of land, worth $11,000 or $12,000 and free from incumbrances. During the past few years, especially the last year or two, affiant's wife had insistently pursued him with a demand that he "fix" his property so she would have control of it or some part of it, threatening to apply for a divorce if he did not, and to apply to the county for a division of the property.   She had threatened to have a guardian appointed.   For a year or more affiant had been in poor health, suffering from Bright's disease, and the importunities of his wife had greatly annoyed and disturbed him. To all of her demands he had turned a deaf ear, knowing that if she survived him she would get her legal proportion of the estate in her own right, and her demands were believed to be made in the interest of her son. Along about April, 1907, affiant consented to give his wife a life lease of the 40 acres on which the house was situated.   They went together to Grand Rapids to have the necessary document prepared.   He was told by the scrivener that the paper would have to be made to a third party.   It was made to Mrs. Fisher, affiant supposing he was giving his wife a life use of the 40 acres.   Affiant learned later on that what occurred was that a warranty deed had been executed by himself and wife to Mrs. Fisher, reserving to the grantors a life estate in the land, and that Mrs. Fisher had conveyed the premises to his wife, Margaret.   Affiant never intended to make such a deed or any deed of any real estate to Mrs. Fisher or to any other person.   He was in poor health and weary

from a long ride and his signature to the instrument was procured by misrepresentation. Affiant told Mrs. Fisher, a few days after he had executed the instrument, to make over the paper to her mother (Margaret) supposing it was only a life lease of the land.

We are not prepared to hold that the writing itself was rightly excluded as a privileged communication from client to attorney. See *O'Toole* v. *Insurance Co.*, 159 Mich. 187 (123 N. W. 795). Was it for any other reason reversible error to exclude it? It is not disputed that in February, 1908, Margaret Provin reconveyed to her husband, and that, as has been stated, he, in that month, deeded to her an undivided half of the 80 acres (including the same 40 acres) and deeded to her daughter-in-law, Hattie Fisher, the other undivided half on the day his will was executed. Margaret Provin had worked with her husband on the farm. When married, he had 120 acres, incumbered. The other 120 acres was acquired after the marriage. New buildings were erected. She admits that she and her husband talked over the matter of the devolution of this property upon his death. She wanted, however, and claimed the right, to have a portion of it in her own right so that if her husband survived her it might go to her heirs. Whatever contention they had —she denies that there was contention—was about this, both understanding that she would be provided for, if she survived her husband, if he made no will. We have found in the record no testimony tending to prove that she exercised any influence upon her husband concerning the will he should make, or did make. Clearly, his declarations could not be received for such a purpose. *Zibble* v. *Zibble*, 131 Mich. 655 (92 N. W. 348); *In re Kennedy's Estate*, 159 Mich. 548 (124 N. W. 516). Indeed, the particular declaration is in affirmance of the idea that her influence was negative rather than controlling. The particular declaration is therefore material only as it tended to prove the mental condition of testator

at the time it was made. It tends to prove, if anything, either that he wholly misunderstood the nature and effect of the business he was transacting, or that he was deceived by those in whom he confided, and that his wife knowingly profited by the deceit which was practiced. Considered in connection with what he did, the inference may be drawn that he was temporizing with his brothers, whose interest in the devolution of his property or whose feelings, or at least the feelings of one of them, are expressed in his testimony, as follows:

"I had a talk one time during the last couple of years with Mr. John Berry, a farmer up in Cannon, about the probate proceedings.

"*Q.* Did you not say at that time and say in probate court that you stated to him the property might all go to hell rather than have any of it go to Mr. Fisher?

"*A.* I don't know that I used just exactly that language.

"*Q.* Well, in substance that?

"*A.* I did say I would rather see it go to the lawyers than to go to Mr. Fisher, and I say so now.

"*Q.* Did you not say you had rather see it go to hell?

"*A.* That would be going to the same place."

But with respect to what the declaration may be said to tend to prove in favor of contestants, the jury had the substance of it before them, and the testimony of contestants that this declaration and similar ones were made is undisputed. The witness Fred J. Provin testified:

"*Q.* I ask you now whether the affidavit contained in substance the talk Charlie had with you in your office?

"*A.* I say it did; yes, sir."

The effect of this undisputed testimony is that testator made and repeated, in substance, the declaration that he was imposed upon when he made the conveyance, that his wife profited by it, that he had without success sought to have her reconvey the land, that he consulted counsel, stated the facts to him, and had prepared and verified a bill of complaint which set out the reasons for compelling her to reconvey. We are of opinion that, while it would

have been proper to admit the declaration in evidence, its exclusion, under the circumstances, was not prejudicial error. Indeed, we are impressed after an examination of the record that a different verdict would have been set aside, upon application, as opposed to the great weight of the evidence.

It would profit no one to notice in detail the numerous objections made to the charge of the court. The court did not always use the language of the requests, and the charge is not less judicial in tone because of the omission of some of the language suggested by counsel. On the whole, the jury was fairly advised of the applicable rules of law.

The judgment is affirmed, with costs to the proponent.

McALVAY, BROOKE, BLAIR, and STONE, JJ., concurred.