*In re* SHANAHAN'S ESTATE.

SHANAHAN *v.* MERRICK.

1. EVIDENCE—ADMISSIONS—EXECUTION.
    Admissions claimed to have been made by the executors and proponents of a will, who, with others, were legatees under it, are inadmissible to prove undue influence.

2. SAME—UNDUE INFLUENCE—WILLS.

Evidence, *held*, to be insufficient to require submission to the jury of alleged undue influence.

Error to St. Clair; Beach, J. Submitted October 16, 1912. (Docket No. 34.) Decided July 9, 1913.

Edmund Shanahan presented for probate the will of Maurrice C. Shanahan, deceased. From an order admitting the instrument to probate, Margaret Merrick and others, contestants, appealed to the circuit court, where the will was sustained. Contestants bring error. Affirmed.

*Frank R. Schell (Lincoln Avery,* of counsel), for appellants.

*Walsh & Walsh,* for appellees.

MOORE, J. This is a will contest. The testator, Maurrice C. Shanahan, executed the will in question November 22, 1904, and died April 15, 1909. The will was allowed in the probate court. An appeal was taken. The case was tried by a jury which found in favor of the will. The case is brought here by writ of error.

We quote from the brief of appellant:

"By the terms of the proposed will the widow has the use and income of the estate during her life. After her death the son Michael is to pay to James Shanahan, Catherine Carroll, Edmund Shanahan, and Ellen Spencer $500 each, and is to erect a monument on the grave of testator, at a cost of $800, and pay funeral bills, doctor bills, and indebtedness, and the residue of the estate is given to Michael Shanahan. The testator left no indebtedness, and there were no doctor bills. Margaret Merrick and Mary Shanahan, Jr., usually called Molly, daughters of testator, and the son, John, who has not been heard from in 39 years, by express terms of the proposed will were to receive nothing. The ages and residences of the children are

as follows: Catherine Carroll, 56 years old, lives in Columbus township, about four miles from testator's home; Mary Shanahan,. Jr., the unmarried daughter, is 54 years old and lives with Robeson's at Port Huron. Edmund Shanahan is 52 years old, and lives about half a mile from testator's home. James Shanahan is 50 years old, and lives at Lambs, about two miles from testator's home. Ellen Spencer, sometimes called Nellie, is 34 years old, and was home winters since her marriage. * * * Michael Shanahan is 43 years old, and lived on the farm with testator * * * after he was married until the summer of 1905, when he built a house right beside James at Lambs, where he still resides. James was married 20 years ago, and prior to that time he lived at home and worked at home summers and worked in the woods winters."

The estate left by Mr. Shanahan is variously estimated to be worth from $4,000 to $6,000, so that it is evident that no large sum will come to the residuary legatee.

The following appears near the close of appellant's brief:

"It needs no comment that contestants are not fighting so much for the value of the property involved as they are fighting for principle, and to prevent the consummation of a great wrong."

Counsel for contestants preferred 67 written requests to charge. These were not given as prepared, but the trial judge sought to cover such of them as were germane in a general charge, covering something more than seven printed pages. He instructed the jury, in effect, that testator was, as a general proposition relating to his mental condition to do business, of sound mind. He also charged them that there was no evidence of undue influence. He left to them one question. We quote from the charge sufficient to show what that was:

"*Ninth.* But the contestants present this other question, and that question is here for your full, fair, de-

liberate consideration. They allege that there was existing in the mind of Maurrice C. Shanahan, at the date and before the making of the November, 1904, will, a state of feeling against Margaret, which is only explained, as they claim, as the contestants claim, by what they claim to have been facts as to the existence in Maurrice C. Shanahan's mind of a delusion as to statements and acts of Margaret Merrick towards himself. Now, this claim is sharply defined, and is the only issue to be presented to you and for your consideration. The claim made in this respect by the contestants is that the testimony indicates that at the time of the making of the will, and before, there was an intense feeling on the part of Maurrice C. Shanahan toward Margaret. The claim is. that that feeling is not accounted for by any testimony here disclosing the relations of the parties, except on the basis that these claimed unfounded feelings existed and were operating in the mind of Maurrice C. Shanahan as to statements made by Margaret, and which had no foundation in fact. That is the claim. Now, as I say, this proposition calls for your careful consideration of all testimony bearing upon this alleged feeling and the alleged statements claimed to have been made by Maurrice C. Shanahan. It is claimed by contestants that the evidence of Ed Shanahan indicates that this feeling existed in its claimed intensity in October preceding the making of this will. You have heard this testimony detailed to you, the statements drawn from Edmund Shanahan as to what Maurrice stated in relation to Margaret and Molly, and the reason why he would not include them in the provisions of the will.

"*Tenth.* It is the claim of the proponents at that date there was no explanation and no reason existing for that state of feeling, except the general relations between Maurrice C. Shanahan and his daughter Margaret, going back from that time through all the family history, and that that feeling had originated and been perpetuated by the attitude of the daughter towards the father. On the part of the contestants testimony was introduced of claimed statements made by Maurrice C. Shanahan in 1905 and 1906, following the making of the 1904 will. Now the proposition by the contestants which you are to consider in this re-

gard is this: That these statments made during the following years after the making of the 1904 will relate back and explain the feeling expressed to Edmund Shanahan in 1904; that they give—those statements give—the reason for the feeling existing at and before the making of the will. Now I say to you gentlemen, that right there is the crucial point for your consideration in this case.

"*Eleventh.* I may say, as preliminary to that, that it is urged here, and is a matter of fact, that these statements claimed to have been made by Maurrice C. Shanahan in 1905 and 1906, or subsequent, rest upon the testimony of interested parties in this litigation. That fact you are to take into consideration in determining, for instance, what weight and credit you will give upon the question as to whether those statements were made as they were detailed before you here in the testimony of these witnesses. The matter of interest in a witness is always a matter for consideration by the jury in determining what weight or credit they will give to any statement made by such witness on the stand.

"*Twelfth.* Now, as I say to you, the crucial question in this case is whether these statements were made as detailed by these witnesses; whether they were made by Maurrice C. Shanahan containing practically the subject of what these witnesses detailed upon the stand as to what they claim existed in Maurrice C. Shanahan's mind in relation to Margaret. Then if you find, as a matter of fact, that they were made substantially as detailed, then the next question naturally would be, do they relate back and explain the condition of mind of Maurrice C. Shanahan in 1904, when he made his will. Have they any connection with the condition of his mind at that time and the statements made to Edmund Shanahan.

"*Thirteenth.* There is no direct testimony in this case that they so related, but the court has deemed it sufficient to go to you from the fact that it is claimed that some of these statements were made in the summer of 1905, some months after the making of the will.

"*Fourteenth.* Now if you should find, as a matter of fact, that these statements do relate back and explain

the condition of mind in 1904 at the time of the making of the will of Maurrice C. Shanahan, then the question remains, and is the sharp, decisive question in the case.

"*Fifteenth.* Did that state of mind exist and prevail to the extent that Maurrice C. Shanahan was insanely deluded upon that question; deluded to the extent that he could not be reasoned with as to whether the facts which he stated were true or untrue? Did he firmly believe them, and were they without foundation in fact? And I may say to you that it is conceded here as a fact in this case that, if those statements were made, they had no foundation in fact.

"*Sixteenth.* But the critical question there is, Did they exist in his mind and actuate his conduct in the making of the will, overshadowing all other questions of differences between himself and Margaret, and actuated and dictated the provisions of the will which disinherited her? And did they exist in that intensity so his mind was perverted by this delusion in relation to these unfounded charges, that they prevailed over every other consideration, and drove him, in that deluded state of mind, to exclude Margaret from his will? In other words, was he a monomaniac on the subject of Margaret's attacks upon him? Did he believe that she had so attacked him; that she had so insulted him; that she had so misbehaved towards him; did he firmly believe it, and did it exist to that extent that he was a monomaniac upon that subject? If you so find, gentlemen of the jury, that fact in itself, in its entirety—that state of mind—would avoid this will, and your verdict should be that this is not the true will of Maurrice C. Shanahan. But if they did not exist to that extent that they completely dominated his mind in making these provisions in excluding Margaret, if other reasons existed in his mind dating back through all the family history that influenced him, if the relation of this father and this daughter had been such that there always prevailed in his mind a disagreement on his part towards her, or feeling towards her, no matter whether founded or unfounded in fact, if it existed in his mind, not to the extent of a delusion, then he had the right and the mental capacity to make this will as he made it."

He then explained to them the legal definition of monomania, or a delusion of this character.

The important question in the case is whether the court erred in not submitting the question of undue influence to the jury. We have read the long brief of counsel with a good deal of care, and looked in vain for the citation of some competent evidence indicating that the will of the testator was overcome by the will of somebody else. We have also searched the long record with the same result. See *Leffingwell* v. *Bettinghouse,* 151 Mich. 513 (115 N. W. 731) ; *Clark* v. *Ulrich,* 153 Mich. 695 (117 N. W. 329) ; *In re Provin's Estate,* 161 Mich. 28, (125 N. W. 743) ; *In re Shepard's Estate,* 161 Mich. 441 (126 N. W. 640) ; *In re Du Bois' Estate,* 164 Mich. 8 (128 N. W. 1092).

It is the claim of contestants that the statements of Michael and Edmund Shanahan should have been received as bearing upon the question of undue influence. We quote from the brief :

"Edmund Shanahan is named as one of the executors in the will. He signed the petition for probate of the will. He is a proponent thereof. *   *   * The statements and declarations of a proponent of a will are admissible in evidence. *In re Loree's Estate,* 158 Mich. 372 (122 N. W. 623) ; *In re Hewitt's Estate,* 161 Mich. 536 (126 N. W. 848, 21 Am. & Eng. Ann. Cas. 47).

"(A) Michael, being named in the will as one of the executors thereof with Edmund, was in duty bound to present it for probate. The statute expressly so provides. Section 9275, 3 Comp. Laws. Hence in law Michael was a proponent of the will as much as Edmund. See Chatterton's Probate Law, §§ 360-362.

"(B) Mike could not evade this law, nor take advantage of that rule of evidence by not signing the petition to probate that will, and leaving it to be signed by Edmund alone.

"(C) It is not the petition alone for probate of a will, but the statute which makes it the duty of execu-

tors nominated in the will to probate it, that gives those persons the character of proponent."

A reference to the cases cited will show they are distinguishable. Michael and Edmund Shanahan did not cease to be legatees any of the time. There were also other legatees. The authorities are against the contention of contestants. See *O'Connor* v. *Madison*, 98 Mich. 183 (57 N. W. 105) ; *In re Estate of Lefevre*, 102 Mich. 568 (61 N. W. 3) ; *Roberts* v. *Bidwell*, 136 Mich. 191 (98 N. W. 1000) ; *In re Ganun's Estate*, 174 Mich. 286 (140 N. W. 561).

The other questions presented by counsel have been considered, but we do not deem it necessary to discuss them. The case was carefully tried, and we find no reversible error.

The judgment is affirmed.

STEERE, C. J., and MCALVAY, BROOKE, KUHN, STONE, OSTRANDER, and BIRD, JJ., concurred.