### *In re* CURTIS' ESTATE.

### GRAVES *v.* NORTHROP.

WILLS—EVIDENCE—INCOMPETENCY—CONCLUSIONS.

> One who is not an experienced medical witness may not express an opinion whether or not the testator was insane, upon the trial of a will case, unless the witness is able to specify circumstances in support of the conclusion, which tend to show an unsound mind. And, *held,* that the evidence was insufficient to present any issue of fact.[1]

Error to Genesee; Wiest, J., presiding. Submitted January 7, 1916. (Docket No. 57.) Decided March 30, 1916.

John C. Graves presented for probate the last will of Alvira M. Curtis, deceased. From an order admitting the same to probate Mable A. Northrop appealed

---

[1]As to opinion evidence by non-expert as to the contractual or testamentary capacity of another, see note to 37 L. R. A. (N. S.) 591.

to the circuit court. Judgment for appellee. Appellant brings error. Affirmed.

*John F. Baker* and *James S. Parker,* for appellant.

*John C. Graves* (*Brennan, Cook & Gundry,* of counsel), for appellee.

BROOKE, J. In this case the contestant seeks to avoid the will of her adopted mother upon two grounds: *First,* that the mother at the time the will and codicil were made was of unsound mind; and, *secondly,* upon the ground of undue influence.

It appears that the testatrix had one child of her own, which died in infancy, and that thereafter she and her husband adopted the contestant when the contestant was about 4 or 5 years of age. The testatrix lost her husband some years before her death, and in that interim had resided in the city of Flint with her daughter, the contestant. She was possessed of an estate of some $6,000 or $8,000, and on June 15, 1910, she made the will in question, adding a codicil thereto on February 12, 1913. She died on March 16, 1914. The terms of the will are unimportant. It is sufficient to say that a very meager provision was made therein for the adopted daughter, and that the bulk of the estate was left by the testatrix to her nephews and nieces, with whom she had not sustained very intimate relations during the latter years of her life.

The record shows that in the fall of 1908, the contestant, then about 17 years of age, became acquainted with one Edward Northrop; that Edward Northrop, apparently with the consent of the testatrix, paid his attentions to the contestant until the following spring. The record further discloses that on March 8, 1909, the contestant clandestinely married said Northrop in the city of Windsor, Canada; that the fact of said marriage was made known to the testatrix about a

week thereafter, and that at that time testatrix drove said Northrop from her house, and refused to permit contestant to live with him as his wife. Contestant, however, did go to her husband and after a few months testatrix again received her in her home, and for a time the testatrix and the contestant lived together. There is no doubt that the marriage of the contestant with Northrop was against the wishes of the testatrix and that she resented such action on the part of her adopted daughter. The record clearly discloses the fact that while at times the testatrix treated Northrop pleasantly, at other times she treated him badly. The will in question was made something more than a year after the marriage, and the codicil thereto about four years thereafter.

The proponents of the will introduced the several witnesses to the will and the codicil, who all testified that in their opinion at the time the two instruments were signed the testatrix was of sound mind. Various friends and neighbors of the testatrix were then placed on the stand by the contestant. They severally related conversations with the testatrix and incidents in her life which had come under their notice. The learned trial judge declined to permit any of the witnesses sworn for the contestant to express an opinion as to the mental capacity of the testatrix, upon the ground that they had testified to no facts inconsistent with mental competency. We are of opinion that the ruling was correct. The rule is settled in this State that nonexpert witnesses may not express opinions that a testatrix was mentally incompetent when they testify to no facts inconsistent with sanity. *Hibbard* v. *Baker*, 141 Mich. 124 (104 N. W. 399) ; *Leffingwell* v. *Bettinghouse*, 151 Mich. 513 (115 N. W. 731), and cases there cited.

Exception is taken to the conclusion of the court that the testimony introduced on behalf of the con-

testant, taken as a whole, was not sufficient to present a question of fact as to the mental competency of the testatrix for the determination of the jury. No purpose could be served by reviewing the testimony of the various witnesses. It is sufficient to say that in our opinion the learned trial judge reached a proper conclusion.

It is the contention of appellant that error was committed by the trial court in refusing to submit to the jury the question of undue influence. The only proof bearing upon that question was given by Guy Morse and his wife, Mrs. Morse, both of whom testified that the testatrix had told them that Jennie Harris, one of the beneficiaries named in the will, and a niece of testatrix, asked her, the testatrix, to give her the piano, and that she had refused, saying that she intended to give it to Mabel, the contestant. The will in fact does leave the piano to the contestant, but contains a bequest to Jennie Harris in the sum of $500. There is no evidence in the record tending to show that Jennie Harris sought to influence the testatrix to leave her $500, or any other sum. There is evidence that the only request made by Jennie Harris of the testatrix was refused. Under these circumstances we are of opinion that the trial court properly withdrew this question from the consideration of the jury, and upon all the testimony directed a verdict in favor of the proponents.

The judgment is affirmed.

STONE, C. J., and KUHN, OSTRANDER, BIRD, MOORE, STEERE, and PERSON, JJ., concurred.