HAMLER *v.* SHIAWASSEE CIRCUIT JUDGE.

1. EXECUTORS AND ADMINISTRATORS — COSTS OF ADMINISTRATION NOT "DEBTS" AGAINST ESTATE.

Costs of administration are not "debts" against an estate within the meaning of the probate laws (3 Comp. Laws 1915, §§ 13864, 13888, 13889, 14157).

2. APPEAL AND ERROR—DELAYED APPEAL—PROBATE COURTS—MANDAMUS.

Mandamus will issue to compel the circuit judge to vacate an order allowing a belated appeal from an order of the probate court admitting a will to probate, where there was no adequate showing under 3 Comp. Laws 1915, §§ 14156, 14157, that justice required a revision of the case.

Mandamus by Austin Hamler and another to compel Joseph H. Collins, circuit judge of Shiawassee county, to vacate an order allowing an appeal from an order of the probate court.   Submitted April 15, 1924.   (Calendar No. 31,293.)   Writ granted June 2, 1923.

*Pulver & Bush,* for plaintiffs.

*W. A. Seegmiller,* for defendant.

STEERE, J.   Plaintiffs seek by mandamus vacation of an order of the circuit judge of Shiawassee county allowing a belated appeal by Oscar F. Letts from an order of the probate court admitting to probation the will of Jane Halstead, a resident of that county who died testate on February 9, 1923, at the age of 75 years, leaving a will bearing date October 18, 1920. The adversary parties in this controversy are plaintiffs and Letts.   He and Austin Hamler are cousins, and grandsons of deceased.   Jessie Graves is Hamler's

On ante-testamentary declarations as evidence of undue influence. see note in 3 L. R. A. (N. S.) 749.

mother. Plaintiffs were the only beneficiaries named in deceased's will, the value of her estate after payment of debts and expenses of administration being about $5,000. The will was admitted to probate, in the probate court of Shiawassee county, on May 14, 1923. Over four months later, on September 21, 1923, Letts filed in the probate court objections to the allowance of said will, alleging as grounds therefor undue influence and mental incompetency of deceased. Seven weeks later, and six months after the will had been admitted to probate, Letts filed a petition, on November 15, 1923, in the circuit court of said county with supporting affidavits asking leave to appeal from the said order of probation. Counter affidavits were filed in opposition to said motion which was heard in the circuit court, defendant in mandamus presiding, on December 11, 1923, and on December 13, 1923, an order was filed allowing the appeal. On December 20, 1923, plaintiffs filed a motion to set aside such order on various grounds, covering the proposition that no sufficient showing had been made upon which to authorize the court to exercise its discretion in permitting an appeal, that if so there was an abuse of discretion, and that the debts of deceased had been paid before the petition for leave to appeal was filed, which barred its consideration. An affidavit by the executor of the will was filed in support of the last named objection, showing claims allowed by commissioners on claims for nursing, medical services, funeral expenses, etc., of deceased amounting to $428.30 and concluding:

"Deponent further says that all of the above claims which are all of the claims against said estate were paid by this deponent out of the funds of said estate on the dates above set forth; that as above set forth, the last claim was paid on the 25th day of October, 1923, which was about three weeks prior to the time of the filing of the petition for leave to appeal in this matter."

Letts had of right 20 days in which to take steps to appeal from allowance of the will, which the probate judge could on cause shown have extended to 60 days (3 Comp. Laws 1915, § 14145).   Though on the ground and familiar with the situation he did nothing in that direction for six months and then applied to the circuit court for leave to appeal under section 14156 which provides that if the aggrieved party shall—

"without default on his part have omitted to claim or prosecute his appeal according to law, the circuit court, if it shall appear that justice requires a revision of the case, may, on the petition of the party aggrieved, and upon such terms as it shall deem reasonable, allow an appeal to be taken and prosecuted with the same effect as if it had been done seasonably."

Section 14157 provides that no appeal can be allowed unless petition therefor is filed within a year following the decree or order complained of—

"and then such appeal shall not be allowed if the debts of said estate have been paid, or the estate distributed to the persons entitled thereto in due course of law."

The affidavit of the executor showed that the claims allowed by the commissioners were all of the claims against the estate and that they were all paid before Letts filed his petition for leave to appeal; but the return of the circuit judge states that the petition for leave to appeal was filed before the executor filed his final account which had not yet been allowed, and the costs of administration, which are a charge against the estate, not having been paid, the debts of the estate had not all been paid to exclusion of leave to appeal.

While the costs of administration are a prior claim, depleting the estate to that extent, and in that aspect may be termed a "debt," an examination of the application of that word in connection with estates as it

runs through the probate laws is persuasive of a limited meaning not contemplating authorized allowances to widows and children during administration, costs of administration, distributions to heirs or legatees, etc. All of these are charges against the estate, must be paid before it is closed and ultimately in the order of payment entirely consume it. That classification, or distinction, appears more than once in the chapter relative to commissioners on claims which provides in the first section (3 Comp. Laws 1915, § 13864) that commissioners need not be appointed "when it shall appear there are no debts existing against such deceased person." Such could never appear if costs of administration are *debts*. It runs through the chapter relative to payment of debts and limitation of time therefor, and is fairly illustrated in the provisions for order of payment as follows:

"(13888) SEC. 6. If the assets which the executor or administrator may have received, and which can be appropriated to the payment of debts, shall not be sufficient, he shall, after paying the necessary expenses of administration, pay the debts against the estate in the following order: 1. The necessary funeral expenses; 2. The expenses of the last sickness; 3. Debts having a preference by the laws of the United States; 4. Debts due to other creditors.

"(13889) SEC. 7. If there shall not be assets enough to pay all the debts of any one class, each creditor shall be paid a dividend in proportion to his claim; and no creditor of any one class shall receive any payment until all those of the preceding class shall be fully paid."

But beyond that technical defense, the only excuse given by Letts for failure to seasonably prosecute his appeal is that Hamler, who had assisted him in caring for their grandmother "during the latter years of her life," had told him that—

"regardless of any disposition the said Jane Halstead might make of her property at her death he, the said

Austin Hamler, would see that your petitioner received his lawful share of her estate; that because of this promise on the part of the said Austin Hamler, your petitioner did not claim nor prosecute an appeal from the said order of the said probate court, admitting the said will to probate, even though he knew that the will was the result of mental incompetency on the one hand and the undue influence of the said Austin Hamler and his mother on the other."

If such a promise was made, which Hamler absolutely denied, it was during the life of the testatrix, without consideration and absolutely void.  No claim is made of any promise after her death nor that he was misled by anything Hamler said or did thereafter.  He knew when the will was probated, and that he was not a beneficiary, he knew that Hamler did not keep the promise alleged to have been made nor do or say anything to indicate that he would, and, as he states, knew of the infirmity of the will which he now urges.  Yet he did nothing to protect his claimed rights while time for appeal was running nor until long after.  He did, however, some three months after the will was probated, assume a hostile attitude by filing in the probate court a futile objection to its probation, indicating that he then at least knew or anticipated Hamler would not keep the alleged promise, and he thereafter waited nearly three months before making any move to appeal.  Had any promise or misleading representation been made to him by Hamler after testatrix's death to induce him not to contest the will, a different question would be involved.

Neither are we persuaded that on this record there is sufficient showing of mental incompetency and undue influence at the time deceased made her will to afford the basis for a discretionary conclusion that justice required a revision of the case.  Letts' verified petition without statement of sustaining evidential facts repeatedly alleges that testatrix's will was the result of mental incompetency and undue influence, in

terms which are but assertions of sworn conclusions with no allegations of fact which would be competent evidence to support a judicial determination on that question.   None of the four subscribers to the affidavits filed in support of the petition showed, or expressed an opinion, that testatrix was mentally incompetent when she made her will.   None of them was present when the will was made.

Barbara Stevenson testified that on one occasion in the year 1916 deceased in talking with her about the disposition of her property told her she "had given John and his folks all that they were to have;" told what she had given them, said all they seemed to want was her property "and they had had all they were going to get out of her property."   Inferentially John was Austin Hamler's father, who died in 1920 not long before the will in controversy here was executed.

Margaret VanHoten stated in her affidavit that in December, 1920, deceased told her that she had made a will and did not feel satisfied with the way she made it.

Mary J. Swanston stated in her affidavit that deceased had discussed with her the disposition of her property, and after she had made her will complained of plaintiffs always being after her money, that she was not satisfied with her will, "was always friendly to her other grandson, O. F. Letts, and this affiant is positive that if it had not been for the influence of some one the said Jane Halstead would have left a part of her property to the said O. F. Letts."

Lelah B. Castle deposed in her affidavit that deceased told her that she had made a will and later changed it and was not satisfied since, but she did not dare to make a new will because plaintiffs had told her that if she did they would go into court and prove her crazy.

The most that can be said of any of these affidavits is that it tends to show declarations by the testator

indicating undue influence, and her condition of mind when she was talking with the affiant.    Such declarations were only permissible to show her state of mind, or the effect that otherwise proven undue influence had upon her in reference to making the will.    In themselves they were incompetent to serve as evidence of the distinct fact of undue influence.    *Harring* v. *Allen,* 25 Mich. 505; *Bush* v. *Delano,* 113 Mich. 321; *Zibble* v. *Zibble,* 131 Mich. 655; *In re Kennedy's Estate,* 159 Mich. 548 (28 L. R. A. [N. S.] 417, 18 Ann. Cas. 892, 134 Am. St. Rep. 743); *In re Provin's Estate,* 161 Mich. 28; *In re Sparks' Estate,* 198 Mich. 421. Being incompetent for that purpose, little remains of the affidavits but the conclusions of the affiant.

It was shown in this case without dispute that Hamler, who was but 22 years old in 1923, went with his parents to Florida in 1910 where plaintiffs have resided since that time.    His father, in whose favor testatrix had made a previous will, died early in 1920 and the instant will was made in October of that year. Deceased visited them in Florida at one time, remaining about three months, and they had occasionally visited her in Michigan, Mrs. Graves on two different occasions, once in 1917 and again in 1920, after the death of her husband.    Hamler visited his grandmother in Michigan in 1917 remaining about three weeks, again in 1920 remaining five days and in June, 1922, when she was suffering from injuries sustained in a fall, remaining with her three days and there met his cousin Letts whom he had not personally known before, and did not see again until their grandmother's death.

When the will in question was made plaintiffs were both in Florida and knew nothing of it at the time. Egbert M. Miller of Owosso, the scrivener who drew the will, testified that deceased came to his office to have her will made, gave him directions to draft it

and dictated its provisions to him without assistance; that neither of plaintiffs was present during that transaction, nor ever made any suggestion to him in regard to her will, or to the testatrix in his presence at any previous time; that so far as he could discern she was under no restraint or influence of any kind, was fully competent mentally, and after he had drafted the will she then duly signed it in the presence of subscribing witnesses.

Upon a trial of the cause on its merits it would be the duty of the court, under the proofs as shown by this record, to instruct the jury that a *prima facie* case had not been made of either mental incompetency or undue influence.

This case is similar to and we think controlled by *McKay* v. *Macomb Circuit Judge*, 222 Mich. 244. There was no adequate showing that justice required a revision of the case to warrant the court in allowing the appeal complained of.

Writ will issue as prayed for, with costs to plaintiffs against contestant Letts.

CLARK, C. J., and MCDONALD, BIRD, SHARPE, MOORE, FELLOWS, and WIEST, JJ., concurred.