*In re* SCHULTE'S ESTATE.

1. WILLS—UNDUE INFLUENCE—JUDGMENT NON OBSTANTE.
    Where there was no testimony tending to establish the charge of testator's daughters that his will leaving the bulk of his property to their stepmother was the result of undue influence, a judgment *non obstante veredicto* was properly entered by the trial court.

2. SAME—STATEMENTS OF TESTATOR INADMISSIBLE TO SHOW UNDUE INFLUENCE.
    Statements made by testator in his lifetime are inadmis-

[1]Judgments, 33 C. J. § 114; Wills, 40 Cyc. p. 1148; [2]Wills, 40 Cyc. pp. 1157, 1158.

sible, in proceedings to contest his will, to establish undue
influence, but they may be admitted to show the state of
his mind.

Error to Wayne; Brennan (Vincent M.), J. Sub-
mitted October 20, 1926. (Docket No. 88.) Decided
December 8, 1926.

Barbara M. Schulte presented for probate the last
will of Anthony C. Schulte, deceased. On petition of
Florence Schulte and another, the will was certified to
the circuit court. Judgment for proponent *non ob-
stante veredicto*. Contestants bring error. Af-
firmed.

*Douglas, Barbour, Brown & Rogers* (*V. E. Crossley*,
of counsel), for appellants.

*John P. Murphy* (*Frank A. Martin*, of counsel), for
appellee.

FELLOWS, J. Deceased, who was employed at an
engine house in the city of Detroit, was granted a
divorce from the mother of contestants in February,
1901. Contestants, then comparatively young chil-
dren, went with their mother and deceased supported
them until they were 18 years old. He married pro-
ponent in 1902, and they lived together until his death,
which occurred April 8, 1923. Contestants secured
good positions and for a time boarded with their
stepmother, one for about two years and a half and
the other less than six months, when she requested
them to leave. This was in the spring of 1909 or
1910. They did not visit or attempt to visit their
father thereafter at his home until he was on his
deathbed, about two weeks before he died, although
one of them did call on him where he worked on one
occasion when she needed some money. On February
1, 1918, deceased made his will leaving his property,

except $100 to each of contestants, to his wife.    On
March 20, 1923, he executed what is termed a codicil
but which partakes more of the character of a will
with identical provisions, except that he gave his
reason for the small bequests to contestants that they
had shown no affection for him and had failed to com-
municate with him for seven years and particularly
during his sickness, of which they were aware.    The
contest was on the ground of undue influence alone.
The case was submitted to a jury who disallowed the
will, but judgment sustaining it was entered *non ob-
stante veredicto*.

The trial court was right in entering the judgment
it did.    There was no testimony tending to establish
undue influence.    The incident of which the most is
made, when proponent requested contestants to find
another boarding place, occurred eight years before
the will was made.    Until this occurrence the con-
testants appear to have had a pleasant home with their
stepmother, although she did suggest that they should
not be extravagant.    They were paying board.    On
this occasion she told them she had heard them talking
about her and directed them to leave.    They appealed
to their father, but she said she was the boss of the
house, struck the table, and was angry, as the testi-
mony shows she was on later occasions when their
names were mentioned.    The father, when appealed
to, maintained a discreet silence.    Contestants' testi-
mony shows him to have been a peace-loving man.
While proponent's statement was somewhat blunt, it
has generally been understood that the wife manages
the house and has something to say about who shall
or shall not board there.    Although contestants did
not visit their father after this occurrence, he did call
on them where they were employed on several oc-
casions.    Outside of this incident, and the fact that
proponent weighed more than her husband, contest-

ants' case consisted of statements made by their father in his lifetime.    If these statements of deceased were evidence of the facts stated, which they are not, they would not establish undue influence.    In the main, they were to the effect that when deceased was asked to contribute money or money matters were discussed, he would say that he would talk with his wife about it.    There are a great many men who leave at their death much smaller estates than this one, said to amount to $15,000, who have not discussed money matters with their wives.    The testimony fairly indicates that the home life of deceased and proponent was a happy one, she was thrifty, and although the wages earned by deceased do not appear, his employment could not have commanded large wages; he supported contestants until they were 18 years old, and the conclusion is irresistible that some one must have managed the household and family affairs economically.    We do not know which one was the more economical of the two, but deceased did know. The property which had been accumulated, either by his, his wife's, or their joint efforts stood in his name. For eight years neither of his children had been to see him except that on one occasion one of them called on him to ask for some money.    In 1918 he made his will.    The property was his and it was for him to decide who should be the object of his bounty.    About five years afterwards he reaffirmed his desire that his wife should have the property except the small bequests to contestants.    No question as to his mental competency is raised.    His statements made in his lifetime did not have any tendency to show undue influence but if they did they could not be received to establish it, but solely to show the state of his mind. In the somewhat similar case of *In re Allen's Estate,* 230 Mich. 584, it was said by Mr. Justice WIEST, speaking for the court:

"But contestant and her mother testified to statements they claim were made by testator indicating a desire on his part to help his daughter but he was not at liberty to do so because it made trouble between himself and proponent.    These statements and others made by testator, relative to acts and utterances of proponent adverse to contestant, did not constitute proof of what he so stated.    *In re Morris' Estate,* 228 Mich. 555; *Zibble* v. *Zibble,* 131 Mich. 655; *In re Provin's Estate,* 161 Mich. 28; *In re Walter's Estate,* 224 Mich. 211.

"The exercise of undue influence must be established by testimony wholly independent of statements or declarations of the testator.    When undue influence is shown to have been exercised, its effect may be disclosed by the state of mind of the testator and such state of mind may be shown by his statements and declarations.    * * *

"We may assume that proponent wanted this will made and even urged testator to give nothing to contestant and have no reason for invalidating his compliance with her desire.

"We pass with scant notice the fact the wife had opportunity to exercise undue influence over her husband and decline to draw any inference therefrom against the will.    Such an inference, if drawn, would subject the relation to one of the meanest and most despicable of suspicions, and the more firmly knit and amicable the relation the stronger would come the miserable suspicion, which leaves out the steadying consideration that it is the legal and moral right of a wife to urge and persuade a husband to provide for her in the event of his death."

The judgment will be affirmed.

BIRD, C. J., and SHARPE, SNOW, STEERE, WIEST, CLARK, and McDONALD, JJ., concurred.