*In re* BARLUM'S ESTATE.

BARLUM *v.* FOX.

1. WILLS—MENTAL COMPETENCY PRESUMED — INSANE DELUSIONS— BURDEN OF PROOF.

It is presumed in law that at the time testator executed his will and codicils he was mentally competent to do so, and one alleging insane delusions has the burden of proof.

2. SAME—INSANE DELUSION DEFINED.

An insane delusion exists when a person persistently believes supposed facts which have no real existence, and so believes against all evidence and probabilities and without any foundation or reason therefor and conducts himself as if such beliefs actually existed.

3. SAME—ACTS HAVING ANY EVIDENTIAL BASIS NOT INSANE DELUSIONS.

No capricious and arbitrary dislikes, unjust suspicions, or prejudices against relatives, or mistaken beliefs as to their feelings and designs towards testator and his property,

---

[1]Wills, 40 Cyc. pp. 1018, 1020; 27 L. R. A. (N. S.) 62; L. R. A. 1915A, 458; 28 R. C. L. 104; 6 R. C. L. Supp. 1704; [2]Id., 40 Cyc. p. 1013; [3]Id., 40 Cyc. pp. 1014, 1015.

however visionary, nor belief of acts or facts which have
any evidential basis, constitute in law insane delusions.

4. SAME—INSANE DELUSION.

   Where testator's daughter made the remark that as be-
   tween her father or mother dying she preferred her
   father's death, his inference therefrom that she desired
   or wished his death is not an insane delusion, however
   faulty his process of reasoning.

5. SAME—NATURAL JUSTICE RULE NOT APPLICABLE WHERE CHILD
   NOT IN NEED OF AID.

   The matter of natural justice has nothing to do with the
   case of a father's will contested by a daughter on the
   ground of his insane delusion, where it appears that she
   is married, and there was no need of the father giving her
   any financial aid.

Error to Wayne; Dingeman (Harry J.), J. Sub-
mitted June 7, 1927. (Docket No. 7.) Decided
October 3, 1927.

John J. Barlum and another presented for probate
the last will of Thomas Barlum, deceased. On petition
of Agnes Fox the matter was certified to the circuit
court. Judgment for proponents on a directed verdict.
Contestant brings error. Affirmed.

*Lightner, Oxtoby, Hanley & Crawford,* for appel-
lant.

*Percy W. Grose, Howard H. Colby,* and *Bernard P.
Costello (Bishop & Weaver,* of counsel), for appellees.

CLARK, J. Thomas Barlum, a lifelong resident of
Detroit, made his last will in 1916, to which he added
four codicils in 1918, 1921, 1922, and 1923, respectively.
He died in 1925 at the age of 86 years. He was sur-
vived by three sons and five daughters. The sons,
from the time they were old enough to do so, worked
for the father in his business, and later became in-

---

[4]Wills, 40 Cyc. p. 1014; [5]Id., 40 Cyc. p. 1033.

terested with him in properties and in business.   All
the daughters are married.   Mr. Barlum left an estate
of the value of nearly one-half million dollars.   The
bulk of it he gave to his sons.   The devises or bequests
to the daughters are of comparatively small value,
Mrs. Agnes Fox being given considerably less than
the other daughters.

Mrs. Fox contested the will on the ground that, at
the time of making it and the various codicils, testator
was not mentally competent because he was obsessed
with an insane delusion that contestant wished or de-
sired his death, and that he was influenced by such
delusion in respect of provisions of the will.   That,
generally speaking, Mr. Barlum was mentally com-
petent to make the will and the codicils there can be,
on this record, no question.   The sole question is the
averred insane delusion, and the substance of it is thus
stated by the trial court:

"Giving the testimony offered here by the contest-
ant the strongest probative force, it appears that be-
ginning about the year 1914 Mr. Barlum stated to other
members of his family that he had been told that
Mrs. Fox wished or desired his death; that thereafter
he refused to speak to Mrs. Fox and for many years
did not speak to her; that he, on several occasions, re-
peated that Mrs. Fox, the contestant, had desired or
wished his death.   It appears further that the con-
testant did say on one occasion that as between her
mother or father dying that she would prefer that her
father died."

About 1914, before the making of the will, and while
Mrs. Thomas Barlum was ill, contestant made the re-
mark stated substantially by the trial court; it was
discussed by some members of the family, and testator
was told of it.   This is not disputed.   Testator told
another daughter that "Mrs. Fox said she wished he
were dead."

It is not necessary to decision, but it should be noted
that, quoting from the charge of the court:

"It further appears that in 1921 at the time of the death of Clara Barlum, one of the daughters of the deceased, Mrs. Fox expressed her sympathy to her father and that on that occasion they became reconciled and to all outward appearances from that time her father treated her as he had prior to the time of the remark with reference to his death. It appears also that in a codicil to the will in 1923, Thomas Barlum increased the bequest to Mrs. Fox to a small extent,"

and that testator stated his reason for giving Mrs. Fox less than the others that "Mr. Fox was a very wealthy man," of which Mrs. Fox testified:

"In 1916, my husband was employed in Central Savings Bank, and was one of the principal owners and one of its principal officers and directors, and about that time, became president of the bank. About two years ago he retired, and up to that time had been one of the largest stockholders and principal officers of the bank and was interested in a great many other things. Whether or not he was a man of large means depends on what you mean by large means. In 1916, and up to the present time, there was no need of my father giving me any financial aid. I had all I needed, and so did my family and so did my husband."

A verdict was directed for the will, and contestant brings error. In directing a verdict, the trial court well said:

"It is presumed in law that at the time he executed this will and the various codicils, that Thomas Barlum was mentally competent so to do, and the burden of proof is upon the contestant to show by competent evidence that at the time Thomas Barlum executed the will and the various codicils here offered, that he made this will as the result of a delusion— an insane delusion emanating from an unsound mind, and that in the absence of such insane delusions he would not have made this will as he did. An insane delusion exists when a person persistently believes supposed facts which have no real existence, and so believes such supposed facts against all evidence and probabilities and without any foundation or reason

for the belief, and conducts himself as if such facts actually existed.

"In considering the question here presented, it is to be borne in mind that no capricious and arbitrary dislikes, unjust suspicions, or prejudices against relatives or mistaken beliefs as to their feelings and designs toward him and his property, however visionary, nor belief of acts or facts which have any evidential basis, constitute in law insane delusions. If there are any facts, however little evidential force they may possess, upon which the testator may in reason have based his belief, it will not be an insane delusion, though on a consideration of the facts themselves, his belief may seem illogical and foundationless to the court; for a will, it is obvious, is not to be overturned because the testator has not reasoned correctly. The ultimate object of the inquiry is whether an insane delusion, destitute of all evidential support, spontaneously arising in testator's diseased mind, influenced him and operated directly against the contestant in this case.

"The contestant here claims that Mr. Barlum was possessed of an insane delusion that the contestant wished or desired his death. It appears that the contestant did say that as between her father or mother dying she preferred her father's death, or words to that effect. Whether a jury or the court would draw the inference from this remark that the contestant desired or wished her father's death is not the question. If Mr. Barlum drew the inference from this remark that the contestant desired or wished his death, however faulty his process of reasoning; however insufficient the evidential support, there was no insane delusion.

"The burden is upon the contestant to show that there were no facts from which he could, by any process of reasoning, however faulty, arrive at his declared conclusions. Actual or presumed innocence of the party in relation to whom the delusion is claimed does not preclude a sane and honest belief to the contrary, for which there is any evidential support, however faulty and insufficient.

"It is my conclusion, therefore, ladies and gentlemen of the jury, that there was some, though, perhaps, remote and inadequate, basis for the belief which it is claimed existed in Mr. Barlum's mind with reference

to his daughter, Mrs. Fox, and, therefore, the testimony does not, as a matter of law, compass all of the essential elements of an insane delusion."

The trial court's decision and definition are well sustained 'by many decisions of this court.     We cite a few of them.     *In re Bolger's Estate*, 226 Mich. 545; *In re Haslick's Estate*, 195 Mich. 432 (Ann. Cas. 1918D, 466); *Bean* v. *Bean*, 144 Mich. 599; *Leffingwell* v. *Bettinghouse*, 151 Mich. 513; *Merriman's Appeal*, 108 Mich. 454.

The matter of natural justice has nothing to do with the case.     See *In re Allen's Estate*, 230 Mich. 584, where the subject is discussed fully.

Judgment affirmed.

SHARPE, C. J., and BIRD, SNOW, STEERE, FELLOWS, and WIEST, JJ., concurred.     MCDONALD, J., did not sit.